UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA**

v.                                                                              Case No.:   8:19-CR-273-T-24JSS

**JOSE WILFREDO ROJAS AMAYA**
_____/

## SENTENCING MEMORANDUM

COMES NOW, the Defendant, JOSE WILFREDO ROJAS AMAYA, by and through undersigned counsel and pursuant to U.S.S.G. §3B1.2, 2D1.1, and 18 U.S.C. §3553(a), and hereby files this Sentencing Memorandum in support of a reasonable sentence, which is not greater than necessary to accomplish the purposes of sentencing, as enumerated in 18 U.S.C. §3553(a)(2). As grounds in support thereof, Mr. Rojas-Amaya shows as follows:

**I.     History**

Mr. Rojas-Amaya is 36 years old, a native of San Vincente, El Salvador who lives currently with his common-law wife Ms. Tomas Grijalba and their two children Jeredith and Milton, ages 3 and 1 in a small concrete house with electricity, but no plumbing.[1] Jose has been a fisherman for the last twenty years, but has also had to spend years doing unpaid hard agricultural labor in order to earn food and shelter for himself and his family. Jose's childhood in a hovel in El Salvador was horrifying by most standards, in shocking poverty and without any loving caretakers. Jose never had a real home, frequently sleeping with siblings on the ground, often without food, or proper clothing, having to survive on the street. He and his siblings managed to stay close to each other

---

1 Pre-Sentence Investigation Report, <u>United States v. Jose Wilfredo Rojas Amaya</u>, Docket No. 8:19-cr-273-T-24JSS, Part C, ¶44-45.

1

in their peril, and communicate to this day.

Jose's most powerful memory of his alcoholic father, who abused him when he was present, and mostly abandoned, him, is of a night when he was a boy and found his father laying in the street, Jose was 12 or 13 years old. Jose wanted to be close to his unconscious father, and spent the night lying next to him, waiting for him to wake up. His memories of his father have colored his emotions about caring for his own children, and he remains terrified about their well-being. Jose has done what he could to work on local farms and for local fishermen, to feed and shelter his own family, but the family is often hungry. They live only in the good graces of his father in law, unable to pay for their own shelter. San Marcos suffers the same level of extreme violence, fueled by crippling poverty, as other areas of El Salvador. There is no regular work there for a man like Jose, and his ability to protect his family from gang violence is a constant stress.

Jose spent years trying to find local odd job work for local fishermen and farmers without succumbing to local gangs. He has repeatedly been beaten, robbed, and threatened as he has tried to thread the needle of supporting his siblings, and young children without giving the small amounts he earns to the local thugs. He has tried to feed his family. In the last few years, Jose has moved between Guatemala and El Salvador in an effort to avoid the violence and still find work.

Jose struggled with fishing work in Guatemala and El Salvador as there were too many men like him jockeying for a piece of work. Fewer boats went out, with smaller catch coming back in. Jose had a harder and harder time finding placement on the bigger boats that could bring in enough to break even, let alone make any income. Making matters worse, the ports were becoming infested with drug traffickers. As local fishermen jockeyed for positions on boats, the traffickers hung out at the docks, intimidating and seducing increasingly desperate fishermen with the promise of easy money. It was in this environment of financial pressure and stress that Jose gave

into the recruiters in Guatemala, who told him he could provide for his family.

When he climbed into the boat that took him into the middle of the Pacific Ocean and this criminal case, Mr. Rojas-Amaya had dreams of giving his children better lives than his had been. The U.S. Coast Guard discovered him and his codefendants in a semi-submersible boat on June 18, 2019, in the Pacific Ocean several hundred miles from his home.[2] Jose and the others were indicted on June 27, 2019, in the Middle District of Florida, Tampa Divison.[3] On October 8, 2019, he entered a plea of guilty to one count of conspiracy to distribute five kilograms or more of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 21 U.S.C. §960(b)(1)(B(ii), 46 U.S.C. §§ 70503(a) and 70506(a) and (b).[4]

**II.    Guideline calculations.**

Mr. Rojas-Amaya's Presentence Investigation Report (PSR) lists his base offense level as a 38, pursuant to U.S.S.G. §2D1.1(c)(1), for an offense involving more than 450 kilograms of cocaine. A Specific Offense Characteristic upward adjustment of 2 levels pursuant to U.S.S.G. § 2D1.1(b)(3)(B) was added alleging that the vessel was semi-submersible. The PSR subtracted 2 levels pursuant to U.S.S.G. §2D1.1(b)(17) and §5C1.2 (safety-valve reduction) for providing truthful information regarding his involvement in the offense to the government, and also subtracted 3 levels for acceptance of responsibility and a timely plea pursuant to U.S.S.G. § 3E1.1(a) and (b). The PSR thus found his total offense level to be a 35.[5] Mr. Rojas-Amaya is undoubtedly in Criminal History Category I, with no prior criminal history.[6] The PSR thus

---

2 Id., Part A, ¶10-12.
3 Id., Part A, ¶1-3.
4 Id., Part A, ¶5-6.
5 Id., Part A, ¶32.
6 Id., Part B, ¶36-37.

estimates his guideline range to be 168-210 months imprisonment.[7] Finally, the PSR also contains a statutory provision of a minimum term of imprisonment of ten years, which will no longer apply due to safety valve. If this Court grants any government motion for a substantial assistance departure, the final guideline range would thus be 135-168 months.

### III. Mr. Rojas-Amaya's History and Characteristics of his Offense Suggest That a Sentence of 135 Months Imprisonment Would be "Sufficient but No Greater Than Necessary" to Comply With the Purposes of Sentencing in 18 U.S.C. §3553(a) of Just Punishment, Public Protection, and Deterrence.

Although the guidelines are "the starting point and the initial benchmark" for determining the appropriate sentence, "[t]he Guidelines are not the only consideration" and the sentencing court must consider all of the 18 U.S.C. §3553(a) factors in crafting a sentence. Gall v. United States, 552 U.S. 38, 49-50 (2007). When considering the §3553(a) factors, the sentencing judge may give more weight to some factors than others. See United States v. Pauley, 511 F.3d 468, 476 (4th Cir. 2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." Kimbrough v. United States, 128 S.Ct. 558, 570 (2007).

A sentence within the range of 135 months is appropriate and just according to the factors that must be examined under 18 U.S.C. § 3553(a). In light of the mitigating history and characteristics of Mr. Rojas-Amaya, as well as the facts and circumstances surrounding the non-violent nature of his offense, a sentence of 135 months, to be followed by a 5-year term of supervised release, will be "sufficient but not greater than necessary" to accomplish all of the purposes of sentencing enumerated in 18 U.S.C. § 3553(a).

   a.   **A sentence of 135 months adequately reflects the seriousness of the offense.**

---

[7] Id., Part D, ¶59.

The quantity of cocaine in this case is undoubtedly great, and a serious prison sentence is required to answer for this crime and send Mr. Rojas-Amaya and others a message of deterrence that is lasting and sobering. However, those goals are accomplished with a sentence of approximately 135 months. Mr. Rojas-Amaya has never before been to prison, or even arrested for breaking the law. He has no familiarity with the criminal world outside this offense. At 36, Mr. Rojas-Amaya has spent his entire life in coastal El Salvador and Guatemala, providing for his family as a fisherman and laborer. For a man like this, his arrest and incarceration has already been the most devastating event of his life. A sentence of 135 months imprisonment is even more devastating for him than for someone in the United States with the same sentence. Mr. Rojas-Amaya is cut off from everything he knows, in a strange place where he understands no one and he knows no one. His isolation during incarceration will be more severe than that of an American citizen serving a similar sentence. Because of this cultural isolation and his utter lack of any history of criminal behavior, a sentence of 135 months is just punishment for this individual.

      b.      **A sentence of 135 months will protect the public.**

Mr. Rojas-Amaya does not require a longer sentence than 135 months to protect the public from any further crimes by him. There is ample evidence in this case that will **never again** return to this country after he completes his sentence and deportation. Furthermore, there is ample evidence that he will never again attempt this crime or any drug-related crime. There are no factors here that suggest a risk of recidivism. Mr. Rojas-Amaya's entire world and system of support exists in El Salvador. His only motivation for attempting this crime was to change and improve the lives of his children. He does not exhibit any characteristics of a man who is lured toward criminal activity even at home. Furthermore, the hallmarks of his life outside this crime suggest that his real life, the one before this offense, will again be his permanent station.

Mr. Rojas-Amaya statistically bears the hallmarks of someone with an extremely low risk of reoffending because of his age, lifetime employment, marital status, and first offender status. Increased age bears a strong correlation with lower recidivism. According to Sentencing Commission data, "recidivism rates decline relatively consistently as age increases," from 35.5% under age 21 to 9.5 % over age 50. USSC, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12 and Exhibit 9 (May 2004). Finally, and most critically, Sentencing Commission studies show that minimal or no prior involvement with the criminal justice system is a powerful predictor of a reduced likelihood of recidivism. *See USSC, A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score,* at 15 (2005).

There is no evidence that Mr. Rojas-Amaya poses any sort of danger to the public, and a wealth of evidence to suggest that he will never again return to the justice system. His history is devoid of any suggestion of criminal activity or violence. On the contrary, Mr. Rojas-Amaya has spent his life raising and helping his family survive even in poverty in his ancestral home. Increased imprisonment in this case is not necessary to establish deterrence. Evidence of the deterrent value of imprisonment is ambiguous at best, and not a sound basis upon which to sentence. *See* Paul J. Hofer & Mark H. Allenbaugh, *The Reason Behind the Rules; Finding and Using the Philosophy of the Federal Sentencing Guidelines,* 40 Am.Crim. L.Rev. 19, 61-62 (2003). Moreover, the punishment Mr. Rojas-Amaya has sustained already is so devastating to him because of his crime that this Court does not need to consider greater incarceration to accomplish adequate deterrence.

Finally, Mr. Rojas-Amaya's arrest has caused a great deal of suffering to his family in Ecuador, and a sentence greater than 135 months will prove traumatic to them, as their economic

situation is already precarious and they rely on him for their survival. The absence of his financial and paternal support for his children will do real damage to their ability to stay in school for the next several years and improve their lives. His absence and extended incarceration is destabilizing to everyone in his life in El Salvador. His family is in real and terrifying danger because he is gone.

## IV.    Conclusion

A sentence of 135 months imprisonment would provide "just punishment" for the offense, would "reflect the seriousness of the offense," and would "promote respect for the law." Additionally, such a sentence will reasonably reflect Mr. Rojas-Amaya's mitigating role in this case, his cooperative efforts, his history and characteristics and will also more than adequately punish him for his non-violent, although very serious crime. At the same time, such a sentence will create respect for the law in that it will illustrate that the law has appropriately considered Mr. Rojas-Amaya as an individual and appropriately taken into consideration his unique human failings which mitigate his crime and his punishment. Even in the absence of the requested departures, this sentence is appropriate when considered according to the factors of 18 U.S.C. § 3553(a).

**WHEREFORE**, the Defendant, **Jose Wilfredo Rojas Amaya**, respectfully moves this Honorable Court, based upon the factors enumerated in 18 U.S.C. §3553(a), to impose a total sentence no greater than 135 months of incarceration to be followed by a 5-year term of supervised release.

DATED this 13th day of January, 2020.

              Respectfully submitted,

              JAMES T. SKUTHAN
              ACTING FEDERAL DEFENDER

>*/s/ Tamara E. Theiss*
>Tamara E. Theiss
>Assistant Federal Defender
>Georgia Bar No. 703979
>400 North Tampa Street
>Suite 2700
>Tampa, Florida 33602
>Telephone:(813) 228-2715
>Facsimile: (813) 228-2562
>Email: Tamara_Theiss@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of January, 2020, a true and correct copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to:

AUSA Diego Novaes

>*/s/ Tamara E. Theiss*
>Tamara E. Theiss
>Assistant Federal Defender